## Case No. 12,185.

RYAN v. CENTRAL PAC. R. CO.

[5 Sawy. 260; 6 Reporter, 641.] [1]

Circuit Court, D. California. Sept. 30, 1878.[2]

GRANTS—TO RAILROADS—LANDS IN LIEU OF DEFICIENCY—PARTICULAR LANDS.

1. A grant of the alternate sections of land designated by odd numbers within twenty miles, on each side of the road, was made to aid in the construction of the California and Oregon Railroad, with a provision that if it should be found that there was not sufficient land within the limits indicated not sold, reserved, subject to preemption, etc., then the grantee might select in lieu thereof enough land to make up the deficiency out of the nearest alternate sections designated by odd numbers outside, but within ten miles of the said limit. The road was located through a tract of country lying within the exterior limits of land claimed under a Mexican grant, for which a claim for confirmation was pending in the United States courts at the time the plat of the survey was filed with the secretary of the interior, and the lands withdrawn from public sale, etc. The claim under the Mexican grant was finally rejected, and after such rejection, there being a deficiency, lieu lands were selected outside of the twenty-mile limit on each side, but within the exterior limits before claimed under said rejected grant: *Held,* that the grant attached to the specific alternate sections designated by odd numbers within the forty-mile limit on the filing of the plat of survey of the line with the secretary of the interior, and the withdrawal of the land from sale, etc.

[Cited in Southern Pac. R. Co. v. Dull, 22 Fed. 493; Same v. Orton, 32 Fed. 479; Same v. Wiggs, 43 Fed. 335.]

2. The grant did not attach to any particular land outside said limit to make up a deficiency until said deficiency had been ascertained, and the selection in lieu thereof actually made.

[Cited in U. S. v. Mullan, 10 Fed. 790; Southern Pac. R. Co. v. Wiggs, 43 Fed. 335.]

3. The Mexican grant covering the lands situated within the limits from which such lieu lands were authorized to be selected, having been finally rejected before such deficiency was ascertained and selections in lieu thereof made, the odd sections outside of the forty-mile limit so embraced in the exterior bounds of said rejected grant were subject to selection to supply such deficiency.

4. Newhall v. Sanger, 92 U. S. 761, distinguished.

5. Statute construed, 14 Stat. 239.

On July 25, 1866, congress passed an act granting the alternate sections of public land,

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Reporter, 641, contains only a partial report.]
2 [Affirmed in 99 U. S. 382.]

not mineral, for a distance of twenty miles on each side of the line of the road, to aid in the construction of a railroad by the California and Oregon Railroad Company (14 Stat. 239). It was also provided, that "when any of said alternate sections, or parts of sections, shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, the lands designated as aforesaid shall be selected by said company in lieu thereof," out of the nearest land within ten miles outside of the lands so granted, etc. The rights of said California and Oregon Railroad Company have become vested in the defendant. The road was located through a tract of land claimed under a Mexican grant to one Manuel Diaz, and at the time of the location proceedings were pending in the courts of the United States for a confirmation of said grant. The said grant was finally rejected as invalid by the supreme court of the United States on March 3, 1873. On October 30, 1874, it was found that there was not sufficient land within the said forty-mile limit subject to the grant to satisfy the said grant; and, thereupon, on said day, the said defendant selected the land in question, and applied for a patent therefor as lieu lands under the provisions of the act, the said land being an alternate odd section, and lying outside and within ten miles of the said forty-mile limit, and being within the exterior limits of said grant claimed to have been made to Diaz. The register and receiver of the Marysville land-office approved said selection December 26, 1874, which approval was affirmed by the secretary of the interior, and a patent in due form was thereupon issued to defendant therefor on March 17, 1875. At the date of said selection said land was public land, said Mexican grant having more than a year and a half before that time been finally rejected, and it was not within any other of the exceptions indicated or implied in the act. Afterwards, on July 14, 1876, the complainant [Michael Ryan], being in all respects qualified, filed an application in due form to be allowed to enter the said land under the homestead act of 1862, paid the proper fees, and received a duplicate receipt therefor from the register and receiver of the land-office of the district. He then filed his bill to restrain the defendant from using its patent, upon the ground that said land was not subject to selection in lieu of the lands specifically granted.

O. P. Evans, for complainant.
J. P. Hoge, for defendant.

SAWYER, Circuit Judge. The land, being at the time of the passing of the act of congress, and the filing of the map of the survey and withdrawal from sale in the office of the secretary of the interior, within the limits of land claimed under a Mexican grant, the only question is, whether it was excluded from

lands from which lieu lands could be selected, notwithstanding the fact that the grant had been finally rejected long before the selection was made. It is claimed by complainant that the case is controlled by the decision in Newhall v. Sanger, 92 U. S. 762. I think it clearly not within the rule adopted in that decision. In that case the grant attached to the specific sections within the limits indicated at the time the location of the road became fixed; or, at least, it took effect upon the withdrawal of the lands by the secretary of the interior from pre-emption, private entry and sale, etc. 12 Stat. 492; Newhall v. Sanger, supra. At the time the right of the railroad company attached there was pending a claim for confirmation of a Mexican grant embracing within its exterior boundaries the land in question; and this was held to take the land out of the category of "public lands," as that term was used in the act, and, consequently, that they were not within the terms of the grant at the time the right attached to the odd-numbered sections. This is the ground upon which the decision is rested.

The court says: "There can be no doubt that by the withdrawal the grant took effect upon such odd-numbered sections of public lands within the specific limits as were not excluded from its operation, and the question arises, whether lands within the boundaries of an alleged Mexican grant which were then (at the time when the grant took effect upon the odd-numbered sections), sub judice, public within the meaning of the act of congress." [Newhall v. Sanger] 92 U. S. 762. In the case now under consideration the grant is specific only to the alternate sections designated by odd numbers within twenty miles on each side of the railroad line; and to these sections only did the grant specifically attach upon filing the map of location and withdrawal from sale, etc., thereon by the secretary of the interior. Such lands as were thus specifically affected by the grant, and were within the exterior limits of a Mexican grant for which a claim was still pending, and such only, are within the decision of Newhall v. Sanger [supra]. Whatever difference of opinion there may have been, and may still be, notwithstanding the decision in that case by a divided court, as to the lands under the conditions of that case, there can be none, I apprehend, on the proposition that the lands in that case would have passed to the railroad company if the Mokelumme grant had been finally rejected before the line of the road had become "definitely fixed." Before that time the grant was a mere float depending wholly upon the future location of the road. The act of congress gave a right to the grantee to annex the grant to land that might be open to appropriation along any line it might select. It required a location of the road to attach the grant to any specific land. And upon the location it attached to all odd sections upon which there was, at that time, no other claim. And the right of location was in the grantee. In this case, the right to select other lands in lieu of the sections specifically designated, which were found to have been previously appropriated, was, also, a pure float within certain limits; and it did not attach to any specific land until it had been finally ascertained that a deficiency existed, and not even then until a selection had been made by the grantee. The right attached to the specific land upon the selection, and not before. And at the time when the deficiency was ascertained and the selection made, and long before that time, the Mexican grant had been finally rejected, and the lands were unincumbered public lands open to selection for homesteads, pre-emptions, or for any lawful purpose without any obstruction whatever. Indeed there is no express exception in this act, as there was in the Central Pacific act, of lands reserved, occupied by homestead settlers, pre-emptions, etc. The exception arises by implication only, from the provision that when any of the alternate sections "shall be found to have been granted, sold, reserved," etc., other lands "designated as aforesaid"—that is to say, "alternate sections," "designated by odd numbers,"—"shall be selected," etc., and this exception by implication only extends by its terms to the twenty-mile limit on each side of the line. But it was, doubtless, not intended that a selection should be made of lands in which some prior existing right had become vested.

Congress manifestly designed the grant to be for the full amount of land indicated; and the only object of any exception at all of the classes mentioned, was to prevent interference with rights existing in others. The exception was not designed to limit the grant, but to avoid disturbing substantial rights already vested and still existing. And that the company might get its full quantity, congress authorized it to make up any deficiency by reason of any right that might have attached to any lands specifically designated by selecting other lands outside the designated limits. The intention was to give the full amount of land designated, and the only care of congress was not to interfere with rights already vested and still existing. The right to the lieu lands only attached on the selection, and at that time there was no conflicting interest. All reason for any exception at all had ceased to operate. Any less favorable construction would practically nullify this grant along a large portion of the line, or any other grant in similar terms throughout a large portion of the state. For examples, in very many cases, indeed, almost universally in California, Mexican grants were for a specific quantity of land within exterior boundaries containing a much larger quantity, like the grant in Fremont's Case, 17 How. [58 U. S.] 573, which was for ten leagues within exterior boundaries containing a hundred leagues. So also the grant to Yturbide, the rejection of which was affirmed in 22 How. [63 U. S.] 290, was for four hundred square leagues within exterior bound-

aries embracing the whole state. Had that single grant chanced to have been undisposed of at the time of the location of any of the several roads in California receiving land grants, not one foot of land would have passed to any railroad company in the state under the decision in Newhall v. Sanger. The grant now in question was intended to be substantial, not a mere delusion; and the act should be construed as it was intended to be understood by congress at the time it was passed, and not as it may suit the convenience or interests of parties who come in seeking the advantages resulting from the construction of the road after its completion under the act, by the parties who built it relying upon this grant. Any construction which shall deprive the defendant of the lands which it reasonably had a right to expect under the act of congress, would wrongfully wrest from it, by judicial sanction, a large portion of the consideration which formed the inducement to the undertaking. I can perceive no plausible ground for the view maintained by the complainant, or for extending the principles adopted in Newhall v. Sanger beyond the limits required by the decision. The judgment in that case is binding upon this court, and must be followed as to all lands in the same category. In my judgment the land in question does not fall within the decision; and it was subject to selection, and the title in the railroad company is valid.

The bill must be dismissed. Let a decree be entered accordingly.

[On appeal to the supreme court, the decree of this court was affirmed. 99 U. S. 382.]